VILLAGE OF CONSTANTINE v. MICHIGAN GAS & ELECTRIC CO.

1. CONSTITUTIONAL LAW—SOVEREIGN POWER OVER STREETS, HIGHWAYS AND PUBLIC PLACES—MUNICIPALITIES—FRANCHISES.

Prior to the time when the Constitution of 1908 became effective, the legislature had sovereign power over streets, highways, and public places; municipalities had only such power as was delegated to them by the legislature, and the delegation to municipalities of the right to grant franchises did not affect the legislative power to grant use to others, even though they already held municipal franchises.

2. ELECTRICITY—STATE FRANCHISE AS TO USE OF STREETS—VILLAGE FRANCHISE.

Upon the renewal of the charter of a corporation, organized under an act which, as amended prior to time of renewal, authorized the corporation to manufacture and distribute electricity to

persons and corporations for light, heat and power purposes and which then, pursuant to statute enacted in 1905, was, by virtue of the character of its business, granted by the State a right to use the public streets, alleys, and highways for the maintenance of poles and wires, the corporation was not required to disclaim user of such places for such purpose pursuant to a franchise by a village nor make an election between the State or village franchise (Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905).

3. Same—Franchises—State—Village.

Under the Constitution of 1850, the grant by the State to a corporation authorized to maintain electrical service of a franchise to use the public streets, alleys, and highways for an unspecified number of years is broader in scope, both as to term and territory, than a village ordinance granting to the same corporation a franchise for such purpose for a period of 30 years, but the two are not inconsistent since the village acquired such power as it then had by virtue of legislative grant (Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905).

4. Same—Contracts—State Franchise.

The acquisition of the right to the use of public streets, alleys, and highways by a corporation engaged in manufacturing and distributing electricity under a State statute enacted in 1905 was a contract right which remains in force to the end of the contract period and which was not subject to abrogation by the legislature, new Constitution, or the court (Const. 1908; Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905).

5. Same—Franchises—Assignments.

Rights of one corporation to use of streets and other public places for purpose of maintaining poles and wires for furnishing electricity acquired under an act of 1905 *held*, property assignable by such corporation to another, especially where street-lighting contract had been entered into between assignee and village in which business was conducted (Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905; 3 Comp. Laws 1915, §§ 11343, 11350).

6. SAME—FRANCHISES—ASSIGNMENT—RENEWAL OF CORPORATE LIFE.

An assignor corporation which had been organized in 1868, renewed its charter in 1898, and in 1905 acquired a State franchise to use public streets for maintaining poles and wires for supplying electricity and had the statutory right to renew its corporate life for 30 years, which assigned its franchise in 1917, conveyed to its assignee a franchise which had not expired in 1939 (Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905; 3 Comp. Laws 1915, §§ 11343, 11350).

7. CORPORATIONS—POWERS—CONSTITUTIONAL LAW—STATUTES.

A corporation's powers are granted to it and defined by its corporate franchise construed in connection with the pertinent constitutional and statutory provisions then in force.

8. ELECTRICITY—TERM OF FRANCHISE.

The term of a franchise to use public streets for maintenance of poles and wires for furnishing electricity must be measured by the possible term of the grantee and not the possible corporate life of the assignee of the grantee (Act No. 411, Pub. Acts 1867, as amended by Act No. 49, Pub. Acts 1897, and Act No. 307, Local Acts 1903; Act No. 264, Pub. Acts 1905; 3 Comp. Laws 1915, §§ 11343, 11350).

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted January 9, 1941. (Docket No. 50, Calendar No. 41,418.) Decided March 11, 1941. Rehearing denied May 21, 1941. Leave to appeal to Supreme Court of the United States denied by Supreme Court of Michigan August 19, 1941; by the Supreme Court of the United States September 13, 1941.

Bill by village of Constantine against Michigan Gas & Electric Company, a corporation, to restrain the conduct of defendant's local business, and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*C. L. Stickler* and *Robert L. Polleys,* for plaintiff.

*Burns & Hadsell* (*Louis H. Fead,* of counsel), for defendant.

Sharpe, C. J.  The village of Constantine brings this suit to restrain defendant, Michigan Gas & Electric Company, from conducting a *local* business of an electric company within the village of Constantine.

The Michigan Gas & Electric Company was organized as of September 21, 1904, under the provisions of Act No. 232, Pub. Acts 1903, for a period of 30 years, under the name of Portage Lake Gas & Coke Company.  This name was changed to Houghton County Gas & Coke Company on February 23, 1906, and that name was changed to Michigan Gas & Electric Company on March 29, 1917.  About this time, the Michigan Gas & Electric Company purchased the property and franchises of the Constantine Hydraulic Company and began to do business within the village of Constantine.  In September, 1934, it renewed its corporate life for 30 years.

The Constantine Hydraulic Company was organized as a corporation in 1868 for a period of 30 years under Act No. 411, Pub. Acts 1867, entitled:

"An act to provide for the incorporation of slack water navigation companies, for the improvement of rivers in the counties of St. Joseph, Cass, Berrien and Cheboygan, and defining their powers and duties."

In 1898, its corporate existence was renewed for a period of 30 years, *i.e.,* until 1928, under Act No. 49, Pub. Acts 1897, which amended Act No. 411, Pub. Acts 1867, as amended.

In 1903, the legislature provided (Act No. 307, Local Acts 1903, amending Act No. 411, Pub. Acts 1867) that companies incorporated under this act "shall also have power and authority to use the water power so owned by it for the manufacture and

generation of electrical current and may then vend such electrical current to all persons and corporations for light, heat and power purposes." (SEC. 12.) And provided "such company may, with the consent of the corporate authorities of any county, city, village or township, erect poles and string thereon wires, or may lay conduits, and maintain the same, in, over and upon any streets, alleys, roads, public grounds, bridges and public places for the purpose of conveying and distributing electrical current, but such permission shall be given for a term not exceeding thirty years." (SEC. 18.)

On March 24, 1903, the village of Constantine by ordinance granted the Constantine Hydraulic Company, its successors and assigns, a franchise to erect, maintain and operate for a period of 30 years an electric light, heat and power system in the village of Constantine.

In 1905, the legislature passed Act No. 264, Pub. Acts 1905, which provided:

"Any person, firm or corporation authorized by the laws of this State to conduct the business of producing and supplying electricity for purposes of lighting, heating and power, and which shall be engaged or which shall hereafter desire to engage in the business of the transmission of such electricity, shall have the right to construct and maintain lines of poles and wires for use in the transmission and distribution of electricity on, along or across any public streets, alleys and highways and over, under or across any of the waters of this State, and to construct and maintain in any such public streets, alleys or highways all such erections and appliances as shall be necessary to transform, convert and apply such electricity to the purposes of lighting, heating and power, and to distribute and deliver the same to the persons, firms and public or private corporations using the same: *Provided*: That the same shall not injuriously interfere with other public uses of

such streets, alleys or highways, or with the navigation of said waters, and that the designation and location of all lines of poles and wires shall be subject to the regulation, direction and approval of the common council of cities, the village council of villages, and the township board of townships, as the case may be:   *   *   *   *Provided further,* That nothing herein shall deprive cities, villages or townships of the power and control over their streets and highways, which they have by the general laws of this State.''

About 1903, the Constantine Hydraulic Company installed a complete system for electrical service in the village of Constantine and from 1905 to 1909 made expensive improvements and purchased water rights and lands outside of the village for use in its system.  It continued to operate its business until March, 1917, when it sold its property and franchises to the defendant, Michigan Gas & Electric Company, which has continued to operate the electrical service business to the present time.

The village ordinance franchise expired in 1933; and on January 5, 1934, the village notified the defendant that it was a mere licensee upon the streets of the village and again in February, 1937, the village notified the defendant that it was upon the village streets by sufferance.  In February, 1938, plaintiff placed in operation its own light and distribution system.

On August 9, 1939, plaintiff filed its bill of complaint against defendant alleging that defendant is doing business within the village of Constantine without any right or authority to maintain such local business and asked a perpetual injunction against defendant restraining it from the conduct of a *local* electrical service business.

The lower court dismissed plaintiff's bill of complaint.  Plaintiff appeals.

Defendant contends that the Constantine Hydraulic Company (its assignor) acquired a *State* franchise of the use of the public streets, alleys and highways, of the village of Constantine under Act No. 264, Pub. Acts 1905, wholly distinct from and superior to the franchise granted it by the village in 1903; that the State franchise was assigned to this defendant in 1917 and is still owned by it; and that such State franchise is still in full force and will, continue, if used, until at least 1958.

It is conceded that defendant company has no right to operate in Constantine in its own right, but defendant claims such right by reason of assignment from the Constantine Hydraulic Company.

Defendant relies upon the language of Act No. 264, Pub. Acts 1905, and the holding of this court in *City of Lansing* v. *Michigan Power Co.*, 183 Mich. 400, as authority for its claim that the Constantine Hydraulic Company acquired a State franchise.

That act reads:

"Any person, firm or corporation *authorized* by the laws of this State to conduct the business of producing and supplying electricity for purposes of lighting, heating and power and which *shall be engaged* * * * in the business of the transmission of such electricity, *shall have the right* to construct and maintain lines of poles."

In *City of Lansing* v. *Michigan Power Co., supra,* a franchise granted to the power company's predecessor and assignor by the city had expired. The defendant company was organized under Act No. 232, Pub. Acts 1903. The city filed a bill of complaint to compel the power company to remove from the public streets the poles, wires and equipment installed by defendant for the purpose of transmitting electricity for power and lighting purposes on

the theory that the right granted the power company's assignor by the city had expired by terms of limitation; and that it was using the streets without right. The power company claimed that it was using the streets under the grant of the legislature contained in Act No. 264, Pub. Acts 1905.

It was established in that case that prior to January 1, 1909, when the Constitution of 1908 became effective, the legislature had sovereign power over streets, highways and public places; that municipalities had only such power as was delegated to them by the legislature; and that delegation to municipalities of the right to grant franchises did not affect the legislative power to grant use to others, even though they already held municipal franchises. The court said (at pp. 403, 404, 411, 412):

" 'It is claimed by the city that the use of the streets by defendant under that franchise [city] and before the passage of the act of 1905 made all use of the streets, while such franchise was in force, even though after the passage of the act of 1905, a use wholly under the franchise, and that it is not now open to defendant, in the absence of an express negation of use under the franchise at the time to make the claim of right under the law of 1905. This claim of the city implies that the franchise constituted the sole authority for the use of the streets by defendant, and that, while the franchise was in existence, no other authority could be accepted, though open to all persons and corporations not having a franchise from the city. This position is untenable, for the city had no authority to grant the use of the streets for the setting of poles and the stringing of wires, except as it derived authority by grant of power from the legislature, and a grant of such authority by the legislature in no way lessened the sovereign power of the legislature also to grant

the right to individuals and corporations within the city, and to do so regardless of any action by the city.

" 'The city of Lansing had authority from the legislature to grant the franchise in question, but this grant of authority in no way prevented the legislature from granting the right to all persons, and the franchise did not estop defendant from having the benefit of a general law of the State.    *    *    *

" 'The legislature, under the Constitution of 1850, had sovereign authority over the public streets and highways of the State, and could grant cities power to exercise the authority locally, and what the legislature could grant to a locality known as a city to do, it could within the same territory grant direct to individuals and corporations for public utility purposes, saving the rights of public user of the streets and the exercise of the police power.' "

It was not necessary that the Constantine Hydraulic Company disclaim the village franchise, nor make an election. It acquired right to the State franchise by operating its electrical system, or, as provided in the statute, by being engaged in the business on the streets and highways of Constantine.

" 'The act of 1905 granted to defendant, as well as to all others, the right to use the streets for the purposes of promoting and making possible public utility service, and, when defendant made use of such grant, it was not necessary for it to disclaim user under the franchise from the city, for the franchise and the act of 1905 were not at all inconsistent in purpose and scope.' "    *City of Lansing* v. *Michigan Power Co., supra,* at page 405.

See, also, *City of Grand Rapids* v. *Consumers Power Co.,* 218 Mich. 414.

Plaintiff contends that the Constantine Hydraulic Company did not acquire a State franchise; and

that the *City of Lansing Case, supra,* does not apply here because the village and State franchises were inconsistent in purpose and scope as the State franchise was without limit of term, while the village franchise under Act No. 307, Local Acts 1903, was limited to 30 years.

Both the village franchise and the 1905 act related to exactly the same subject matter, *i. e.,* the right to use the streets and other public places for the purpose of maintaining electrical service. The State granted to corporations what it had previously denied authority of villages to grant, *i.e.,* the right to the use of public places for electrical service for an unspecified term. The State franchise is broader in scope, both as to term and territory, than the village franchise, but it is not inconsistent therewith.

In the *City of Lansing Case, supra,* we also said:

" 'The act of 1905 tendered a franchise to defendant; such franchise was accepted by defendant by way of installing its service equipment in the public streets and providing a service of a public utility; and this tender and acceptance constitute a contract between the State and defendant beyond the power of the legislature, the Constitution, or of this Court to impair by destroying the contract right to remain in the streets.

" 'It is true that it is not every act of the legislature providing for incorporation or relating to corporate rights and privileges that will constitute a contract, but when the legislature by act invites a public utility corporation to expend money in establishing a plant upon the grant of the right to use the public streets, then, upon accepting the grant and establishing the plant and installing the public service equipment in the streets, there has come into existence a contract beyond the power of any division of the government to impair by recall of the

grant to be upon the public streets.'" (Pp. 410, 411.)

Under the above authority, the Constantine Hydraulic Company had a State franchise under Act No. 264, Pub. Acts 1905, which was a contract between the State and the company, remaining in force to the end of the contract period.

In the *City of Lansing Case, supra,* it was also settled that the State franchise under the 1905 act was not terminated by the Constitution of 1908. In that case, the Court said:

" 'The Constitution of 1909 [1908?] did not revoke and terminate existing user of the streets under Act No. 264, Pub. Acts 1905. The Constitution did abrogate the law of 1905, but it did not and could not revoke existing contracts under that act arising out of beneficial user of the streets for public utility purposes.

" 'Constitutional provisions, as well as legislative enactments, must be held prospective in operation only, unless they carry upon their face an intention to be retrospective.

" 'It would not help, however, to hold the constitutional provision retrospective, for the reason that contract rights are not subject to impairment by later constitutional provisions any more than by legislative enactments.' " (P. 409.)

Plaintiff contends that defendant could not acquire rights by assignment for a period longer than the life of the Constantine Hydraulic Company. As has already been stated, the defendant company in 1917 acquired all the property and franchise rights of the Constantine Hydraulic Company. This company was organized under and by virtue of the authority contained in Act No. 411, Pub. Acts 1867, which was a general law. See *Nelson* v. *McArthur,* 38 Mich. 204. In 1917, when the transfer by assign-

ment was made, 3 Comp. Laws 1915, § 11343, was in force. Under this section of the law, it is provided that the purchasers at sale of assets shall be entitled to have and exercise all the privileges and franchises held by such corporation as if they were the original incorporators. And at the time of the above transfer, Act No. 112, Pub. Acts 1889 (3 Comp. Laws 1915, § 11350),* provided:

"That any corporation formed under any general law of this State may at any general or special meeting of its stockholders, with the consent of three-fourths of its capital stock, sell and convey all its property and franchises, rights and privileges or any portion of its real property or franchises to any other corporation formed under the same or any similar law for corporate purposes of the same character."

Moreover, the above assignment was recognized by the village of Constantine as a valid assignment as in 1923 the village entered into a street lighting contract with defendant company to furnish electrical energy for a period of 10 years. Under such circumstances and by virtue of the law upon our statute books at the time the transfer was made, we conclude that the franchise was a contract constituting property rights and was assignable.

Having determined the right of transfer and succession, the next question presented is whether the State franchise is still in force. It is urged by defendant that under the authority of *Benton Harbor* v. *Michigan Fuel & Light Co.,* 250 Mich. 614 (71 A. L. R. 114), the State franchise granted to the Constantine Hydraulic Company under Act No. 264, Pub. Acts 1905, and assigned to defendant is now

---

* Now 2 Comp. Laws 1929, § 10172 (Stat. Ann. § 21.291). Attempted repeal in Act No. 211, Pub. Acts 1927, was ineffective. *C. N. Ray Corp.* v. *Secretary of State,* 241 Mich. 457.—REPORTER.

in force and will so continue, if used, until 1958 at least.

Plaintiff contends that under Act No. 307, Local Acts 1903, a binding contract, *i.e.,* the franchise of March 24, 1903, was executed by and between the village of Constantine and the Constantine Hydraulic Company; and that this franchise agreement was limited to 30 years from and after the above date.

In determining this question we have in mind that the State franchise did not run to the "grantee, its successor or assigns," but merely to the grantee; that assignment of franchises is permitted by statute; that although the grantee's corporate term was 30 years, it had the right by statute (Act No. 49, Pub. Acts 1897) to renew its corporate life.

We think the defendant company has continuing rights which had not expired at the time of filing the bill of complaint.

In the *Benton Harbor Case, supra,* we said:

"A corporation's powers are granted to it and defined by its corporate franchise construed in connection with the pertinent constitutional and statutory provisions then in force. *Mason* v. *Perkins,* 73 Mich. 303, 319. The constitutional provision and statutes above quoted gave the Excelsior Gas Company the power to extend its corporate life beyond the initial period of 30 years, and it is conceded that plaintiff cannot and it does not question the validity of the assignment under which defendant holds this franchise. This court has quoted with approval the words of Justice Lurton in *City of Owensboro* v. *Telephone Co.,* 230 U. S. 58 (33 Sup. Ct. 988, 57 L. Ed. 1389):

" 'The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a

public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself, or as a consequence of some limitation imposed by the general law of the State, or by the corporate powers of the city making the grant.' *North Michigan Water Co.* v. *Escanaba,* 199 Mich. 286, 303.

"This holding of Justice Lurton is noted and approved in subsequent decisions of the United States supreme court. See *Russell* v. *Sebastian,* 233 U. S. 195 (34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282), and cases cited on page 204; also, *Covington* v. *Railway,* 246 U. S. 413, 418 (38 Sup. Ct. 376, 62 L. Ed. 802, 2 A. L. R. 1099)." (P. 619.)

See, also, 71 A. L. R. 121.

It is urged that in the *Benton Harbor Case, supra,* a municipal franchise was involved, while in the case at bar a State franchise is in issue. This question is settled by the *City of Lansing Case* where we held that a State franchise was a contract which could not be impaired by abrogation of Act No. 264, Pub. Acts 1905, by the Constitution of 1908. We, therefore, conclude that the corporate term of the Constantine Hydraulic Company, to which the State franchise was granted, was not fixed or limited as it possessed the power of renewing and extending its term of corporate existence. The term of the franchise must be measured by the possible term of the Constantine Hydraulic Company and not the possible life of the defendant company. As in the *Benton Harbor Case, supra,* we are not called upon to determine how far into the future this franchise may continue. It is sufficient to say that it will continue until 1958, at least.

Plaintiff also urges the right to damages for nuisance, encroachment and obstruction. We are

in accord with the finding of the trial court upon this question:

"The bill of complaint filed herein also contends that defendant's lines have become a nuisance in the village and are dangerous to the safety of the inhabitants therein.

"The only evidence is that plaintiff has produced this danger by placing its lines above those of defendant."

The decree of the trial court is affirmed, with costs to defendant.

BUSHNELL, BOYLES, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred.