**TCG DETROIT, Plaintiff,**

v.

**CITY OF DEARBORN, Defendant and Third–Party Plaintiff,**

v.

**AMERITECH MICHIGAN, Third–Party Defendant.**

No. 96–CV–74338–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 28, 1997.

---

Richard C. Marsh, Detroit, MI, for TCG Detroit.

John W. Tanner, III, Debra C. Walling, Dearborn City Legal Dept., Dearborn, MI, William Malone, Miller, Canfield, Paddock and Stone, Washington, DC, for City of Dearborn.

Joseph A. Fink, Peter H. Ellsworth, Dickinson, Wright, Moon, VanDusen & Freeman, Lansing, MI, Bruce R. Byrd, Dickinson, Wright, Moon, VanDusen & Freeman, Detroit, MI, for Ameritech Michigan.

## MEMORANDUM OPINION AND ORDER

ZATKOFF, District Judge.

### I. INTRODUCTION

This matter is before the Court on defendant City of Dearborn's motion to dismiss Count II of plaintiff TCG Detroit's complaint and to strike certain paragraphs from the complaint. Plaintiff has filed a response, and defendant has replied. The Court finds that the facts and legal arguments are adequately presented in the parties' briefs and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, defendant's motion is denied in part and granted in part.

### II. BACKGROUND

According to its complaint, plaintiff, TCG Detroit, is a telecommunications provider licensed to provide basic local telecommunications service in certain areas of Southeastern Michigan, including the City of Dearborn. Plaintiff plans to construct, install and maintain facilities within the city limits of Dearborn. These facilities are to be constructed in electrical conduit in Detroit Edison's right-of-way.

According to the complaint, the City of Dearborn is requiring that TCG obtain the City's approval to enter upon Dearborn's rights-of-way, easements, and public places before constructing and installing their facilities. Plaintiff also alleges that the City of Dearborn is requiring, pursuant to Dearborn's Telecommunications Systems Regulatory Ordinance, various fees, agreements, and permits before allowing the plaintiff to construct the necessary facilities. Plaintiff alleges that Dearborn's regulatory ordinance, and the way it is being applied to them, is in violation of the Federal Telecommunications Act of 1996.

Specifically, plaintiff alleges that the City of Dearborn's requirements are in violation of 47 U.S.C. §§ 253(a) (Count I) and 253(c) (Count II). It is section 253(c) that is the subject of the instant motion. Defendant City of Dearborn contends that 253(c) does not provide for a private cause of action and moves to dismiss Count II pursuant to Fed. R.Civ.P. 12(b)(6).

Additionally, defendant City of Dearborn seeks to have stricken certain paragraphs from the complaint as they are irrelevant and immaterial pursuant to Fed.R.Civ.P. 12(f). In a previous order, the Court dismissed the state law count (Count IV) of plaintiff's original complaint. Thereafter, plaintiff filed an amended complaint in which the factual allegations from the dismissed Count IV were transferred and incorporated to Count II of the first amended complaint. Although factual allegations were transferred, plaintiff insists that there are no state law claims for relief in the first amended complaint.

### III. STANDARD OF REVIEW

A motion brought pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of the plaintiff's complaint. The Court must accept as true all factual allegations in the complaint, and any ambiguities must be resolved in plaintiff's favor. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577 (6th Cir.1992). A district court may properly grant a motion to dismiss when no set of facts exists which would allow the plaintiff to recover. *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir.1993).

### IV. OPINION

A. A cause of action under 253(c).

In Count II of its complaint, plaintiff alleges that the City of Dearborn's ordinance, and the way it's applied, violates 47 U.S.C. § 253(c) because another telecommunications

provider currently providing service is not subject to the same fees, costs, and requirements being imposed upon it. The statute at issue, 47 U.S.C. § 253, provides in relevant part that:

(a) In general

No State or local statute or regulation, or other State or local legal requirement, may prohibit, or have the effect or prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a state or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of the public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or, legal requirement to the extent necessary to correct such violation or inconsistency.

\* \* \* \* \* \*

■ The language of section 253(c) does not explicitly create a private cause of action for a telecommunications provider that alleges it is being discriminated against. The defendant argues that 253(c) does not create a right of action on plaintiff's behalf, but, rather, only provides a "safe harbor for local governments for actions that might otherwise constitute a barrier to entry proscribed under Subsection (a)." (Defendant's brief at p. 4). Defendant bases their position on the plain language of the statute and on the recent opinion of *GST Tucson Lightwave, Inc. v. City of Tucson*, 950 F.Supp. 968 (D.Ariz.1996), which held that there is not available an implied private right of action under section 253(c).

Plaintiff argues that a cause of action is implied in section 253(c) and that an examination of the relevant factors, including the legislative history, makes it clear that Congress intended to include a private right of action. The Court agrees.

■ Although section 253(c) does not make explicit a private right of action, such a right may be implied. The Supreme Court has set forth the factors relevant in determining whether a private remedy is implicit in a statute not expressly providing one. The factors are:

First, is the plaintiff "one of the class for whose especial benefit the statute was enacted," that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff. And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

In applying the above factors from *Cort* to 47 U.S.C. § 253, it is clear to the Court that there is implied a private right of action.

First, plaintiff is one of the class for whose benefit the statute was enacted. Plaintiff is a telecommunications provider. The statute is entitled "removal of barriers to entry" and its purpose, as well as the general legislative scheme of the Act, is to stimulate competition among telecommunications providers. Ac-

cordingly, plaintiff is one of the class for whose benefit the act was passed.

Second, the legislative history evinces an intent by Congress to create a cause of action under 253(c). The comments made during the debate of the Stupak–Barton amendment, which became the enacted 253(c), indicate Congress's concern with allowing the states to retain control over their local-rights of way. 141 CONG. REC. H 8460–61 (August 4, 1995). The comments also clearly indicate Congress' desire that local governments retain their freedom to set fair and reasonable rates for a provider's use of their right-of-ways. *Id.* However, those comments, and the exclusion of Representative Dan Schaefer's 'parity provision' [1], do not eviscerate the explicit language of 253(c) that local governments, although retaining the right to manage their public right-of-ways, must do so fairly and "on a competitively neutral and non-discriminatory basis." 47 U.S.C. § 253(c).

Further support for recognizing a cause of action under 253(c) is found in 253(d). Section 253(d) provides for the preemption of state statutes or regulations that violate the provisions of 253(a) or (b). However, 253(d) does not provide for preemption of 253(c). Thus, the implication is that any violation of 253(c) could not preempted but rather would have to been challenged locally. This is sup-

ported by the Senate debate on 253(d), which was ultimately adopted and passed by both the House and Senate. H.R. CONF. REP. No. 104458, at 127, *reprinted in* 1996 U.S.C.C.A.N. 138.

Senator Gorton, in discussing his amendment to the preemption section 253(d), stated that:

> There is no preemption ... for subsection (c) which is entitled, "Local Government Authority," and which is the subsection which preserves to local governments control over their public rights of way. It accepts the proposition ... that these local powers should be retained locally, *that any challenge to them take place in the Federal district court in that locality and that the Federal Communications Commission not be able to preempt such actions.*

141 CONG. REC. S 8213 (June 13, 1995) (emphasis added).

Thus, as seen from the Senator Gorton's discussion of 253(d), it was clearly anticipated that any challenge to 253(c) would take place in the local federal district court. Because Congress anticipated the forum for a challenge to 253(c), it follows a fortiori that there is a right to bring such a challenge.

Moreover, it is simply illogical to presume that although a telecommunications provider would have a cause of action under 253(a) if it

---

1. The parity provision would have required that any fees or charges imposed upon a telecommunications provider for use of the local right-of-ways would have to have been exactly equal regardless of the extent to which one provider needed to impose on the right-of-ways compared to another. 141 CONG. REC. H 8427 (August 4, 1995). This provision was rejected by the Stupak–Barton amendment. In offering his amendment to replace the manager's amendment, which included the parity provision, Representative Stupak stated:

> [L]ocal Governments must be able to distinguish between different telecommunications providers. The way the manager's amendment is right now, they cannot make that distinction.
> For example, if a company plans to run 100 miles of trenching in our streets and wires to all parts of the cities, it imposes a different burden on the right-of-way than a company that just wants to string a wire across two streets to a couple of buildings.
> The manager's amendment says that local governments would have to charge the same

fee to every company regardless of how much or how little they use the right-of-way or rip up our streets .... [rather] the companies should have to pay a fair and reasonable rate to use the public property.

*Id.* at H 8460. The Stupak–Barton amendment was adopted in place of the manager's amendment. As can be clearly seen from Representative Stupak's comments, the parity provision was defeated because it did not allow a local government to distinguish between providers and impose a "fair and reasonable rate" to providers based on their use of the right-of-ways. Nothing in the debate of the Stupak–Barton amendment, which became section 253(c), indicates that it was intended to allow a local government to impose rates on anything other than a fair, non-discriminatory basis. Thus, the legislative history underlying section 253(c) does not support defendant's argument that Congress did not intend a right of action under 253(c), rather, it only supports the proposition that Congress intended that local governments be allowed to impose fair and reasonable rates on a nondiscriminatory basis.

was being denied entry into a market by a local statute or ordinance; yet, that same telecommunications provider would be left without recourse if the local government authority—while not denying entry into a market—discriminated against it in the application of fees, costs, permits or agreements. Such an obviously inconsistent result could not have been the intent of Congress in enacting the Telecommunications Act of 1996.

Therefore, based on the analysis of the legislative history, the Court finds an indication of legislative intent, explicit and implicit, to create a cause of action under 253(c). Because this Court finds an intent to create a cause of action from the legislative history as discussed above, the Court disagrees with, and finds unpersuasive, the opinion of *GST Tucson Lightwave, Inc. v. City of Tucson,* 950 F.Supp. 968 (D.Ariz.1996) *appeal docketed,* No. 96–326 (9th Cir.Jan.15, 1997), which holds the opposite.

■ Turning to the third factor from *Cort* it is consistent with the legislative scheme to imply a right for the plaintiff. The Conference Report states that the Act is to provide for a "pro-competitive, de-regulatory national policy framework designed to accelerate rapidly private section deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition...." H.R. CONF. REP. No. 104–458, at 113, *reprinted in* 1996 U.S.C.C.A.N. 124. Thus, the legislative scheme is explicitly designed to promote telecommunications deregulation and accelerate competition. To imply a right of action for a telecommunications provider which is being discriminated against by a municipality would indeed be consistent with the legislative scheme. It is the interpretation advanced by the defendant—that there is no right of action under 253(c) for a provider who alleges discriminatory treatment at the hands of a municipality—which rings inconsistent with the stated purposes and intent of the Act.

■ Fourth, the cause of action is not one relegated to state law in an area basically the concern of the States. Congress stated that the legislation act as a "pro-competitive, de-

regulatory *national policy framework.*" Thus, Congress intended the legislation be national in scope and it would not be inappropriate to infer a cause of action based solely on federal law.

Accordingly, based on the Court's analysis, as stated above, of the relevant factors established by *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court finds a cause of action available to the plaintiff under section 253(c). Sections 253(a) and 253(c) provide for two separate and distinct causes of action. Discriminating against a telecommunications provider in fees, costs or other requirements under section 253(c) is not the same as prohibiting the ability of an entity to provide telecommunications service. A local regulatory ordinance, while not by its terms prohibiting entry in violation of 253(a), could be nonetheless applied by the local authority in such a manner as to violate the competitively neutral, non-discriminatory provisions of 253(c), in which case the statute and the legislative history are clear, a challenge is proper in the local federal district court.

## B.  State law paragraphs

Defendant's motion also seeks to have stricken certain paragraphs from the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(f). Previously, this Court dismissed plaintiff's state law claim alleging a violation of the Michigan Telecommunications Act. The Court dismissed that claim based on a concern of jury confusion over the differing standards applicable to the federal and state claims. Thereafter, plaintiff filed an amended complaint in which the factual allegations from the dismissed Count IV were transferred and incorporated in Count II of the first amended complaint. In addition, plaintiff added paragraph 58 to its amended complaint.

■ Defendant claims that these transferred allegations should be stricken pursuant to 12(f) as they were previously dismissed, and because they are irrelevant, immaterial, and still potentially confusing. The Court agrees in part. Federal R. Civ. P. 12(f) provides that "Upon motion made by a party ... the court may order strick-

en from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

Although some of the allegations transferred by the plaintiff are merely additional factual allegations, others impermissibly implicate the state law claim previously dismissed by this Court. The offending paragraphs raise the same problem regarding jury confusion with which this Court was previously concerned when it dismissed plaintiff's parallel state claim for relief. Moreover, the offending portions are simply irrelevant considering the Court's previous dismissal of the state law claim for relief. The Court wishes to make clear that defendant City of Dearborn's right to require agreements, franchise fees, or any fees, pursuant to the Michigan Telecommunications Act is not part of this case. Whether or not Dearborn is requiring compensation in a competitively neutral and non-discriminatory manner under 47 U.S.C. § 253(c) is the relevant inquiry. the Court finds inappropriate, immaterial, and orders stricken pursuant to Fed. R. Civ. P. 12(f), the following portions of plaintiff's first amended complaint: the last sentence of paragraph 14, paragraph 58 in its entirety, and the state law reference in paragraph 64.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that defendant City of Dearborn's motion to dismiss Count II of plaintiff's first amended complaint is DENIED. IT IS FURTHER ORDERED that defendant City of Dearborn's motion to strike is GRANTED, to the following extent: the last sentence of paragraph 14, paragraph 58 in its entirety, and the state law reference in paragraph 64 of plaintiff's first amended complaint are to be STRICKEN.

IT IS SO ORDERED.