---

**CONCURRING IN PART, DISSENTING IN PART**

---

   RALPH B. GUY, JR., Circuit Judge, concurring in part and dissenting in part. I concur fully in the decision to affirm summary judgment in favor of Ameritech. If the court is correct that there is an implied private right of action, then I concur in the court's analysis with respect to the appeal of TCG. However, for the reasons set forth in the concurrence by Judge Noonan in *Cablevision of Boston, Inc. v. Public Improvements Commission*, 184 F.3d 88, 107-09 (1st Cir. 1999), I believe there is no private right of action.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0081P (6th Cir.)
File Name: 00a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---



TCG DETROIT,
  *Plaintiff-Appellant (98-2034),*
      *Plaintiff (98-2035),*

    *v.*

CITY OF DEARBORN,
      *Defendant-Appellee
    (98-2034),Third-Party
    Plaintiff-Appellant
    (98-2035),*

AMERITECH MICHIGAN,
INCORPORATED,
     *Third-Party
    Defendant-Appellee
    (98-2035).*

Nos. 98-2034/2035

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-74338—Lawrence P. Zatkoff, Chief District Judge.

Argued: November 5, 1999

Decided and Filed: March 7, 2000

Before:  GUY and BOGGS, Circuit Judges; and HOOD, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  David F. Graham, SIDLEY & AUSTIN, Chicago, Illinois, for TCG Detroit.  William Malone, MILLER & VAN EATON, Washington, D.C., for City of Dearborn. Joseph A. Fink, DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN, Lansing, Michigan, for Ameritech Michigan, Inc.  **ON BRIEF:** Charles H. Polzin, HILL, LEWIS, ADAMS, GOODRICH & TAIT, Birmingham, Michigan,  Roderick S. Coy, CLARK HILL, Okemos, Michigan, Richard C. Marsh, CLARK HILL, Detroit, Michigan, for TCG Detroit.  William Malone, MILLER & VAN EATON, Washington, D.C., Debra C. Walling, Dearborn, Michigan, for City of Dearborn.  Joseph A. Fink, John M. Dempsey, DICKINSON, WRIGHT, MOON, VAN DUSEN & FREEMAN, Lansing, Michigan, Michael A. Holmes, Detroit, Michigan, for Ameritech Michigan, Inc. David E. Marvin, FRASER, TREBILCOCK, DAVIS & FOSTER, Lansing, Michigan, Gary L. Field, Harvey J. Messing, James A. Ault, LOOMIS, EWERT, PARSLEY, DAVIS & GOTTING, Lansing, Michigan, Michael J. Lichtenstein, SWIDLER, BERLIN, SHEREFF & FREIDMAN, Washington, D.C., David A. Handzo, Deanne E. Maynard, JENNER & BLOCK, Washington, D.C., for Amici Curiae.

   BOGGS, J., delivered the opinion of the court, in which HOOD, D. J., joined.  GUY, J. (p. 16), delivered a separate opinion concurring in part and dissenting in part.

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

constitutional revisions, although the law under which the earlier contracts had been made was changed thereby as to future contracts.  The district court found Public Acts 129 and 264 to be sufficiently similar to apply case law concerning Public Act 264 (governing utility companies) to Act 129 (governing Michigan Bell).  It found support for this approach in the fact that the Michigan Attorney General, reasoning in just this way, had advised the Village of Roseville in 1957 that its attempt to impose a franchise fee on Ameritech was invalid given the latter's existing state franchise.

   The district court properly looked to Michigan law for the interpretation of the retroactivity of constitutional revisions to pre-existing contracts, and found no support for the City's position.  It correctly granted summary judgment to Ameritech.

**V**

   For the foregoing reasons the judgments of the district court in each case are **AFFIRMED**.

require its own consent to the establishment of a telephone system within the city: "Under this statute the sole authority of the municipality is the proper exercise of the police power, inherent in it, to protect the public . . . . It has no authority to impose other conditions." *Michigan Tel. Co. v. City of Benton*, 121 Mich. 512, 80 N.W. 386 (1899).

The City argues that Act 129 was abrogated by revisions to the Michigan Constitution, adopted in 1908, of which Article VIII § 28 provided:

No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, without the consent of the duly constituted authorities of such city, village or township; nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township. The right of all cities, villages and townships to the reasonable control of their streets, alleys and public places is hereby reserved to such cities, villages and townships.

This provision was retained in all substantial respects by the Michigan Constitution of 1963, Art. VII § 29. Ameritech contends that the revisions of 1908 do not apply retroactively.

There have been similar lawsuits involving utility companies organized under Michigan Public Act 264, the counterpart for utilities to Public Act 129 governing telecommunications companies. In such suits, the Michigan Supreme Court has taken a position similar to what is urged by Ameritech in this case, and the district court applied the Michigan Supreme Court's reasoning here. *See City of Lansing v. Michigan Power Co.*, 183 Mich. 400, 150 N.W. 250 (1914); *Village of Constantine v. Michigan Gas & Elec. Co.*, 296 Mich. 719, 296 N.W. 847 (1941). Both cases held that pre-existing franchise rights were not affected by the

---

––––––––––––––––––

## OPINION

––––––––––––––––––

BOGGS, Circuit Judge.   TCG Detroit ("TCG"), a telecommunications provider, appeals the district court's grant of summary judgment to the City of Dearborn ("the City") on the issue of whether the City's requirement that TCG pay the City a certain franchise fee for the privilege of laying fibre-optic telecommunications cable within its limits, pursuant to a city ordinance, violates the Federal Telecommunications Act of 1996 ("the Act"),  47 U.S.C. § 253.   TCG had also alleged that the City's requirement constituted a violation of 42 U.S.C. § 1983.  The district court had earlier dismissed without prejudice TCG's state claim, which had alleged a violation of the Michigan Telecommunications Act of 1995, invoking 28 U.S.C. § 1367(c).  It adhered to that ruling, refusing to reinstate that claim "based on a concern of jury confusion over the differing standards applicable to the federal and state claims." *TCG Detroit v. City of Dearborn*, 977 F. Supp. 836, 841 (E.D. Mich. 1997).

In the course of its dispute with TCG, the City also demanded a franchise fee from an existing provider, Ameritech Michigan ("Ameritech"), resulting in a suit which has been consolidated with TCG's case.  The City claimed that the Act gave it authority to charge such a fee.  The district court granted summary judgment to Ameritech on the grounds that the Michigan law under which Ameritech was incorporated, and its original franchise granted, prohibits the local imposition of franchise fees on providers who had already been granted a franchise by the State of Michigan. The City appeals.

## I

In 1994, TCG made an agreement with Detroit Edison to lay fibre-optic telecommunications cable in the latter's

existing electrical conduit rights-of-way. The cable was to be owned by Detroit Edison and in part leased back to TCG for its use in providing telecommunications services. TCG had laid almost eight miles of a proposed total of twenty-seven miles of cable when the City, advised of the agreement by Detroit Edison, objected and demanded a franchise fee before work could proceed further.

TCG and the City began negotiations (during which the City passed an ordinance authorizing it to collect the fees in question) and, by June 29, 1995, had reached a tentative agreement, memorialized in the City's proposal of that date to TCG. This provided for the payment by TCG of 4% of its gross revenues, on top of a $50,000 one-time fee and up to $2,500 in reimbursement of the City's administrative costs. TCG's regional counsel accepted this proposal in principle, suggesting amendments (among them, a provision that any agreement would be modified to reflect future changes in federal and state laws), in a letter dated September 22, 1995.

Meanwhile, legislation that would become the Act was introduced in Congress in May 1995. The Act was passed in 1996, to become effective in February 1998. Believing that this legislation foreclosed the City's right to require the franchise fee, TCG backed away from the agreement as it had stood, and in a series of letters to the City between January and March 1996 attempted to obtain a permit without payment of the fees previously discussed. Continuing talks with the City failed to resolve the issue, whereupon TCG brought suit in September 1996.

In addition to alleging that the City was violating the Act, TCG alleged discrimination against it and in favor of Ameritech, which was not being required to pay any franchise fee. Thereupon, the City demanded a fee of Ameritech, which refused, prompting the City to implead it as a third-party defendant.

also correctly rejected TCG's argument that the fee constituted an impermissible barrier to entry in violation of §253(a).

Therefore, the district court's dismissal of TCG's suit on motion by the City for summary judgment was proper.

## IV

In its original incarnation as Michigan State Telephone Company, Ameritech had sought and been granted a franchise from the state upon its incorporation, in 1904, pursuant to Michigan Public Act 129 ("Act 129"), a law passed in 1883 to provide for the organization of telephone service companies. The provision of Act 129 relevant to the case at bar reads as follows:

> Every such corporation shall have power to construct and maintain lines of wire or other material, for use in the transmission of telephonic messages along, over, across, or under any public places, streets and highways, and across or under any of the waters in this state, with all necessary erections and fixtures therefor: Provided, That the same shall not injuriously interfere with other public uses of the said places, streets, and highways, and the navigation of said waters; to construct, provide, and furnish instruments, devices, and facilities for use in the transmission of such messages, and to construct, maintain, and operate telephone exchanges and stations, and generally to conduct and carry on the business of providing and supervising communication by telephone, and also the business of furnishing messenger service in cities and towns.

Public Act 129, 1883.

The district court noted that the only limitation in Act 129 was the implied authority of a municipality to regulate in the interest of the general welfare, as the Michigan Supreme Court held when the City of Benton Harbor attempted to

the same, and that only the totality of the circumstances could illuminate whether a fee is "fair and reasonable."

The court found the fee in question to be both fair and reasonable, considering the amount of use contemplated (twenty-seven miles), the amount that other providers would be willing to pay (three others had agreed to similar fees), and the fact that TCG had agreed in earlier negotiations to a fee almost identical to what it was now challenging as unfair.[3] The court's examination of this question was thorough and its reasoning sound.

TCG also complains that since the City did not charge Ameritech a franchise fee, doing so in TCG's case is discriminatory, a violation of both the Act, 47 U.S.C. § 253(c), and, in consequence, of 42 U.S.C. § 1983. But, as the district court pointed out, the City did seek to charge such a fee, resulting in the third-party suit against Ameritech also before this court.

The fact that Ameritech prevailed before the district court in its contention that state law prohibits the City from subjecting it to the franchise fee charged others does not mean that the City is thereby discriminating in Ameritech's favor. Possibly, if Ameritech thus enjoys a state-mandated freedom from such fees, its competitive position is strengthened, and it might be able, in theory, to undercut its competition; if it did so, the result might be a barrier to entry by newcomers. But this would be a different issue, and TCG has not alleged that this has occurred.

Since the district court found the fee to be fair and reasonable, and its imposition to be neither discriminatory in intent nor, in and of itself, anti-competitive in effect, the court

---

[3] The amounts in question are the same; various subordinate provisions remaining to be settled when negotiations broke down do not appear to have been made part of the City's final position, the details of which are, moreover, unclear.

On cross motions for summary judgment by all parties, the City prevailed against TCG, the district court ruling that a fair and reasonable franchise fee was permitted by the Act and that TCG's near-agreement on the terms demanded showed that TCG itself had considered the City's proposed fees "reasonable." Ameritech, however, convinced the district court that state law, under which Ameritech's predecessor, Michigan State Telephone Company, had first negotiated its franchise in 1904, precluded any local authority from altering the franchise's terms. The City had argued, unsuccessfully, that the 1908 amendments to Michigan's constitution, expanding municipal authority over rights-of-way, could be applied to a pre-existing chartered company.

The district court noted that the case is one of first impression in this Circuit, this court never having had occasion to consider the implications of the Act's "fair and reasonable compensation" provision. Since the district court's ruling, this court has had occasion to consider a case in which the Act is, at least in part, implicated. *See Michigan Bell Tel. Co. v. Climax Tel. Co.*, 186 F.3d 726 (6th Cir. 1999), *amended*, No. 98-1315, 2000 WL 29984, 2000 Fed. App. 0025A (6th Cir. Jan. 18, 2000). However, the instant case requires us for the first time to construe § 253 of the Act. We hold that the district court correctly construed § 253, and did not err in its other rulings.

## II

The immediately relevant subsections of the pertinent section of the Act are:

§ 253.  Removal of barriers to entry

(a) In general
   No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b)  State regulatory authority

Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this section, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c)  State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d)  Preemption

If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253(a)-(d).

Before considering the issues presented in this case, however, this court must be assured that it has jurisdiction. The district court raised the question of whether TCG has standing to sue under the Act, and held that § 253 implies a private right of action for those claiming barrier-to-entry injury. *See TCG Detroit v. City of Dearborn*, 977 F. Supp. at 839. But other district courts have held otherwise. *See, e.g., GST Tucson Lightwave, Inc. v. City of Tucson*, 950 F. Supp. 968, 970-71 (D. Ariz. 1996) (holding no private right of

Accordingly, we hold that the Michigan district court correctly decided in *TCG* that § 253(c) of the Act authorizes a private right of action in federal court for telecommunications providers aggrieved by a municipality's allegedly discriminatory or allegedly unfair and unreasonable rates.

### III

TCG attempts to characterize the City's ordinance as a prohibition, itself prohibited by 47 U.S.C. § 253(a). Appellant's Brief at 18-19. TCG then describes the fee required to obtain the franchise as an afterthought, which conditionally lifts that prohibited prohibition. This is sophistry. The provider must apply for a franchise; the City assesses a franchise fee; no fee paid, no franchise given. That cannot "be described as a prohibition [within the meaning of section 253(a)]." *Id.* at 19 (quoting *AT&T Communications of the Southwest, Inc. v. City of Austin*, 975 F. Supp. 928, 939 (W.D. Tex 1997)). The issue here is not, as in *AT&T Communications*, a municipality's withholding of consent to a franchise application, something the City never contemplated vis à vis TCG, but rather TCG's challenge to a fee that the Act would appear, on its face, explicitly to permit, if "fair and reasonable" and "competitively neutral and non-discriminatory."

The question then is whether the fee assessed by the City is "fair and reasonable compensation," within the meaning of the Act. In concluding that it is, the district court first examined, and rejected, TCG's contention that this phrase, which is not defined in the Act, should be given the same meaning as the words "just and reasonable" in the Pole Attachment Act, 47 U.S.C. § 224 (which applies to cable television providers' use of utilities' poles). The latter defines "just and reasonable" in terms of recovery of additional costs borne by the utility in providing pole attachments. The court noted that Congress did not choose to insert a comparable definition in the Act, that "costs" and "compensation" are not

To be sure, since *Cort v. Ash*, the Supreme Court has become more restrained in its willingness to find an implied private right of action. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (adopting a "stricter standard" of "congressional intent"). But a majority of the Court has not gone so far as to hold that *Cort v. Ash* has been "effectively overruled" (*see Thompson v. Thompson*, 484 U.S. 174, 188 (1988) (Scalia, J., concurring in the judgment)). Rather, the Court has required some affirmative evidence of congressional intent, in "the language and focus of the statute, its legislative history, and its purpose." *Touche Ross*, 442 U.S. at 575-76. In this case, in addition to the fact that such a right plainly serves the purpose of the legislative scheme, the language of the Act seems clearly to suggest that Congress intended that a private right of action be available. Section 255, mandating access by persons with disabilities, expressly provides that there shall be *no* private right of action to enforce *that* section's requirements. *See* 47 U.S.C. § 255(f). The resulting implication is that the neighboring section 253(c) concerning the assessment of fair, reasonable, and competitively neutral franchise fees, from which such limiting language is conspicuously absent, *does* confer such a right.

We recognize that Judge Noonan, concurring in the result in *Cablevision*, was convinced, in large part by §§ 252(e)(6), 258(b), and 274(e), that the Act is always explicit when it contemplates a private right of action. But these subsections refer to legal remedies in the alternative, over and above procedures or remedies available from the Commission or from state commissions. The subsection of § 253 authorizing Commission action, § 253(d), pointedly omits reference to violations of § 253(c). Thus, we believe it is incorrect to say that reading a private right of action into § 253(c) "runs counter to the statutory scheme of § 253 itself." 184 F.3d at 108. A violation of § 253(c) might well *not* involve violating § 253(a); unfair or unreasonable fees need not rise to the level of erecting a barrier to entry, while only the latter violation authorizes the Commission to act pursuant to § 253(d).

action, express or implied, for § 253 injuries); *accord AT&T Communications v. Austin, Tex.*, 975 F. Supp. 928, 936 (W.D. Tex. 1997).[1]

Although the City does not contest as error the district court's holding that § 253 confers an implied private right of action, it is incumbent on us to address this issue, since the question of TCG's standing implicates the United States Constitution's Article III case-or-controversy requirement, which must be satisfied for a federal court to hear the case. *See Juidice v. Vail*, 430 U.S. 327, 331-32 (1977) ("Although raised by neither of the parties, we are first required to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Article III . . . ."). If this requirement of Article III is not satisfied, jurisdiction is lacking. *See In re GF Corp.*, Nos. 92-3583, 92-3585, 1993 WL 239062, at *2 (6th Cir. June 30, 1993) (unpublished opinion). Where jurisdiction is lacking, the court must on its own motion dismiss the case. Fed. R. Civ. P. 12(h)(3).[2]

---

[1]In *AT&T Communications v. Austin*, the Texas district court nevertheless granted AT&T an injunction against the enforcement of an Austin ordinance that, the company argued, violated both § 253(a) and (c) of the Act by requiring municipal consent to its providing telecommunications services. In doing so, the court found its jurisdiction in the Supremacy Clause, ruling that the Act preempted local regulatory authority, and that AT&T could challenge such authority on those grounds; although it agreed with the Arizona court in *GST Tucson Lightwave*, and AT&T also conceded, that the Act confers no private right of action, the Texas district court also found neither exclusive nor primary jurisdiction in the FCC. 975 F. Supp. at 937-39. The same approach was followed in another Texas case. *See AT&T Communications, Inc. v. City of Dallas*, 8 F. Supp. 2d 582 (1998). We are not, however, persuaded that such a jurisdictional analysis provides a proper basis for proceeding.

[2]The First Circuit has said that a court can avoid this issue, in the context of a § 253 claim, but its discussion first confuses whether a plaintiff has standing to sue, i.e. whether a private right of action exists (a jurisdictional question), with whether a plaintiff states a cause of action upon which relief can be granted (a non-jurisdictional one), and then misstates the relation between statutory and Article III standing. *See*

In this case, as in *GST Tucson*, a telecommunications provider claims that a municipality has violated § 253(c), and damaged the provider, by setting rates for different providers that are competitively biased and discriminatory, and by charging it unfair and unreasonable rates. As the court in *GST Tucson* noted, there is no express authority in this section for a private right of action. *See* 950 F. Supp. at 969. The question is then whether such a right is implied. The disagreement between that court, and the Michigan district court in *TCG*, concerns the meaning of § 253's language as well as the statute's broader structure.

The subsections of § 253 quoted above raise several questions. Does (d) provide for exclusive jurisdiction of the FCC in violations of (a) and (b), or is a private right of action also implied? Does (d)'s omission of (c) mean that a private right of action, instead of FCC jurisdiction, applies to violations of (c)? Or is (c) omitted from (d) because it merely provides a safe harbor for municipalities, such that, to be actionable, a violation of (c) must be a violation of (a), subject (perhaps solely) to FCC enforcement under (d)?

---

*Cablevision of Boston, Inc. v. Public Improvement Comm'n*, 184 F.3d 88, 100 n.9 (1st Cir. 1999). Article III standing may indeed be lacking where statutory standing exists, and the First Circuit correctly cites *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), for this proposition. It is an entirely different thing, however, to assert that a plaintiff has Article III standing, and that this provides jurisdiction, where a statute deprives that very plaintiff of standing to sue. *Lujan* cannot be turned on its head in this manner. In any event, the Supreme Court held in *Merrill Dow Pharmaceuticals, Inc. v. Thompson* that "when Congress has determined that there should be no private, federal cause of action . . . [a claimed] violation does not state a claim 'arising under the Constitution, laws, or treaties of the United States.'" 478 U.S. 804, 817 (1986). *See also* Erwin Chemerinsky, Federal Jurisdiction 285 (3d ed. 1999) ("A great many federal laws do not create private causes of action . . . . After *Merrill Dow*, none of these statutes can be the basis of federal question jurisdiction."); *Walls v. Waste Resource Corp.*, 761 F.2d 311, 314-16 (6th Cir. 1985) (affirming dismissal, for lack of subject matter jurisdiction, of a complaint resting on a non-existent private right of action).

---

Section 257, "Market entry barriers proceeding," is devoted entirely to mandating FCC identification and review of "entry barriers for entrepreneurs and other small businesses in the provision and ownership of telecommunications services and information services . . . ." 47 U.S.C. § 257(a). This would seem on its face to strengthen the view that the FCC has exclusive jurisdiction over violations of § 253(a). As the Arizona district court commented, "[e]nforcement of § 253 is provided for in § 253(d) and § 257, further indicating an absence of congressional intent that a private right of action be implied." *GST Tucson*, 950 F. Supp. at 970.

However, the district court whose judgment we review here quotes to telling effect the Senate debate on § 253(d), as that subsection is intended to relate to the safe harbor of subsection (c). During the debate, Senator Gorton explained:

> There is no preemption . . . for subsection (c) which is entitled, "Local Government Authority," and which is the subsection which preserves to local governments control over their public rights of way. It accepts the proposition . . . that these local powers should be retained locally, *that any challenge to them take place in the Federal district court in that locality and that the Federal Communications Commission not be able to preempt such actions.*

977 F. Supp. at 840 (quoting 141 Cong. Rec. S 8213 (June 13, 1995) (emphasis added by the district court)).

Moreover, we are persuaded by the district court's careful discussion, which need not be duplicated here, of the Supreme Court's four-factor test in *Cort v. Ash*, 422 U.S. 68, 78 (1975), which provides guidance in determining whether a Congressional statute creates an implied private right of action. *See TCG*, 977 F. Supp. at 839-41. This is a test to which the Arizona court referred in *GST Tucson*, but which it failed to apply. *See* 950 F. Supp. at 970.