# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 06-1398/06-1459

_____

| | | |
|---|---|---|
| Level 3 Communications, L.L.C., | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| City of St. Louis, Missouri, | * | |
| | * | |
| Appellant/Cross-Appellee, | * | |
| _____ | * | |
| | * | |
| Missouri Chapter of the National | * | Appeals from the United States |
| Association of Telecommunications | * | District Court for the Eastern |
| Officers and Advisors; National | * | District of Missouri. |
| Association of Telecommunications | * | |
| Officers and Advisors;  International | * | |
| Municipal Lawyers Association; Local | * | |
| Government Lawyer's Roundtable, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellant/Cross-Appellee, | * | |
| | * | |
| Southwestern Bell Telephone L.P., | * | |
| doing business as AT&T Verizon | * | |
| Telephone Companies; MCImetro | * | |
| Access Transmission Services, LLC, | * | |
| doing business as Verizon Access | * | |
| Transmission Services, | * | |
| | * | |
| Amici on behalf of | * | |
| Appellee/Cross-Appellant. | * | |

_____

Submitted: October 16, 2006
Filed: February 5, 2007
_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.
_____

BEAM, Circuit Judge.

This case involves a telecommunications licensing agreement that requires Level 3 Communications (Level 3) to pay fees and meet other obligations before accessing streets and rights-of-way owned or controlled by the City of St. Louis (City or St. Louis). The parties appeal and cross-appeal the district court's rulings on cross-motions for summary judgment. We reverse the district court's grant of summary judgment to Level 3 under 47 U.S.C. § 253(a), affirm the denial of summary judgment on Level 3's section 1983 claim, and do not reach the other statutory and non-statutory claims asserted by the parties.

## I.    BACKGROUND

In April of 1999, Level 3 and St. Louis entered into the licensing agreement (the Agreement). The Agreement incorporates by reference the terms of St. Louis City Revised Code Chapter 23.64, which allows the City to regulate the process and procedures by which a telecommunications entity may occupy the streets and public rights-of-way within the City. The portions of Chapter 23.64 incorporated into the Agreement require Level 3, among other things, to submit an application for licensure, to apply for amendments to the license, to provide and install municipal service conduits within a common trench upon request, to maintain a performance bond for the City's benefit, to maintain liability insurance in the amount of at least $500,000, to indemnify the City for any negligence of City employees in any way connected

with Level 3's communications system, and to employ only City-approved contractors for work on network facilities installed under the license.

The Agreement also allows the City to charge Level 3 an annual licensing fee. The amount charged–the footage fees–is calculated annually based upon not only the number of linear feet of conduit installed by Level 3 within the City but also the number of active conduits within each linear-foot. The amount charged per foot also varies yearly to adjust for inflation.

In late July 2003, Level 3 refused to continue paying the footage fees due under the Agreement. Litigation ensued. Level 3 filed suit against the City seeking a declaration that the Agreement's obligations, both fee and non-fee related, violated state law, 42 U.S.C. § 1983, and the Federal Telecommunications Act of 1996, specifically, 47 U.S.C. § 253. The City also filed a declaratory judgment action asking that the Agreement be found valid under state and City law, and that the court compel Level 3 to comply with the contract. The district court consolidated the cases. The parties filed cross-motions for summary judgment, resulting in the district court order now before us.

The district court held the footage fees valid under state law and found no cause of action under 42 U.S.C. § 1983. The court then addressed the alleged violation of 47 U.S.C. § 253.[1] While Level 3 admitted that it could point to no services it had been

---

[1] 47 U.S.C. § 253 reads, in pertinent part:

§ 253. Removal of barriers to entry

(a) In general
      No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

unable to provide to date because of the Agreement, the court found that Chapter 23.64, as incorporated into the Agreement, "includes several provisions that 'in combination' 'have the effect of prohibiting' the ability to provide telecommunications services under 47 U.S.C. § 253(a)."

Having concluded that Chapter 23.64 as a whole violated section 253(a), the court then went on to determine whether the safe harbor provision of section 253(c) saved any of the individual provisions incorporated into the Agreement. The court found that the non-fee requirements, such as the application, common conduit trench, indemnity, bond, and certified contractor obligations were reasonable public safety requirements related to the management of public rights-of-way and thus valid under section 253(c). However, the court found that for the linear-foot fee to meet the definition of "fair and reasonable compensation" it "must be directly related to the actual costs incurred by the City when a telecommunications provider makes use of the rights-of-way." Because the City offered no evidence that the fees had "any relation to the City's costs in managing, inspecting, and maintaining its rights-of-way," the court held that they did not qualify as "fair and reasonable compensation" under section 253(c).

--------

. . . .

(c) State and local government authority
  Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

## II.   DISCUSSION

Though various district courts in this circuit have construed section 253, we have yet to do so.  The language and structure of section 253 has, to understate the matter, "created a fair amount of confusion."  New Jersey Payphone Ass'n, Inc. v. Town of West New York, 299 F.3d 235, 240 (3d Cir. 2002).  Therefore, before engaging in a review of the district court's final judgment, we will delineate the relationship between sections 253(a) and 253(c), and establish who has the burden of proof when a violation of section 253(a) is being considered.

### A.   The Relationship Between Sections 253(a) and 253(c)

Subsection (a), a rule of preemption, articulates a reasonably broad limitation on state and local governments' authority to regulate telecommunications providers. Subsection (c) begins with the phrase "Nothing in this section affects" and then enumerates various protected state and local government acts.  Thus, section 253(a) states the general rule and section 253(c) provides the exception–a safe harbor functioning as an affirmative defense–to that rule.  Id.;  Bellsouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1187 (11th Cir. 2001).

We write on this point to make it clear that only after "the party seeking preemption sustains its burden of showing that a local municipality has violated Section 253(a) by formally or effectively prohibiting entry into the [telecommunications services] market [does] the burden of proving that the regulation comes within the safe harbor in Section 253(c) fall[] on the defendant municipality." New Jersey Payphone, 299 F.3d at 240 (citation omitted).

We acknowledge that others disagree with our understanding of subsection (c)'s role in section 253.  Level 3, in its amended complaint, correctly states that section 253(a) limits the ability of state and local governments to regulate, but then suggests

that section 253(c) also limits the ability of state and local governments to regulate their rights-of-way or charge "fair and reasonable compensation." In a broad sense this may be true, but only if the challenged regulation violates section 253(a). Further, the Sixth Circuit, in TCG Detroit v. City of Dearborn, 206 F.3d 618, 624 (6th Cir. 2000), found that the challenged fee did not violate section 253(a), and then, nonetheless, proceeded to analyze the fee under section 253(c), despite that section's clear role as an exception to section 253(a)'s general rule.

We disagree with the approach taken by the Sixth Circuit because section 253(c) is not self-sustaining. The language of section 253(c) following the phrase "Nothing in this section affects" "derives meaning only through its relationship to (a)." Bellsouth Telecomms., 252 F.3d at 1187-88. Indeed, section 253(c), standing alone, "cannot form the basis of a cause of action against a state or local government." Id. at 1189. Thus, requiring proof of a violation of subsection (a) before moving to subsection (c) is the only interpretation supportable by a plain reading of the section as a whole.

**B.      Burden of Proof Required to Show a Violation of Section 253(a)**

Having held that a violation of section 253(a) is a prerequisite to section 253(c) analysis, we now address what a plaintiff must establish to support a violation of section 253(a).

Section 253 (a) states: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Under a plain reading of the statute, we find that a plaintiff suing a municipality under section 253(a) must show actual or effective prohibition, rather than the mere possibility of prohibition. We again acknowledge that other courts hold otherwise and suggest that *possible* prohibition will suffice. Qwest Commc'ns Inc. v. City of

<u>Berkeley</u>, 433 F.3d 1253, 1256 (9th Cir. 2006); <u>Qwest Corp. v. City of Portland</u>, 385 F.3d 1236, 1239 (9th Cir. 2004), <u>cert. denied</u>, 544 U.S. 1049 (2005); <u>Qwest Corp. v. City of Santa Fe</u>, 380 F.3d 1258, 1270 n.9 (10th Cir. 2004); <u>City of Auburn v. Qwest Corp.</u>, 260 F.3d 1160, 1175 (9th Cir. 2001); <u>see also</u> <u>Puerto Rico v. Municipality of Guayanilla</u>, 450 F.3d 9, 18 (1st Cir. 2006); <u>Puerto Rico Tel. Co. v. Telecomms. Regulatory Bd.</u>, 189 F.3d 1, 9 (1st Cir. 1999).

We disagree with the approach of our sister circuits because they reach a conclusion contrary to a complete analysis of the section. Examination of the entirety of section 253(a) reveals the subject of the sentence, "[n]o State or local statute or regulation, or other State or local legal requirement" is followed by two discrete phrases, one barring any regulation which prohibits telecommunications services, and another barring regulations achieving effective prohibition. However, no reading results in a preemption of regulations which might, or may at some point in the future, actually or effectively prohibit services, as our sister circuits seem to suggest. By inserting the word "that" before "may," as one circuit has done, <u>Puerto Rico v. Municipality of Guayanilla</u>, 450 F.3d at 18 (1st Cir. 2006), or by creative quotation, as another circuit has found convenient, <u>e.g.</u>, <u>Qwest Corp v. City of Portland</u>, 385 F.3d at 1239 (9th Cir. 2004), the most precise meaning of section 253(a) has been distorted.

When the language of a statute is clear, as we believe is the case with section 253(a), our only duty is to enforce the enactment according to its terms. <u>E.g.</u>, <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534 (2004). Thus, we hold that a plaintiff suing a municipality under section 253(a) must show actual or effective prohibition, rather than the mere possibility of prohibition. The plaintiff need not show a complete or insurmountable prohibition, <u>see</u> <u>TCG New York, Inc. v. City of White Plains</u>, 305 F.3d 67, 76 (2d Cir. 2002), but it must show an existing material interference with the ability to compete in a fair and balanced market. <u>Cal. Payphone Ass'n</u>, 12 F.C.C.R. 14,191, 14,206, 1997 WL 400726 (FCC) ¶ 31 (July 17, 1997).

## C.     Summary Judgment on Section 253(a)

Having determined what evidence is necessary to bring a successful section 253(a) claim, we now turn to the district court's order.  We begin with the district court's grant of summary judgment in favor of Level 3 on the question of whether the City's ordinance violates section 253(a).

When reviewing a grant of summary judgment, we review the district court's decision de novo, examining the facts in a light most favorable to the non-moving party.  Martin v. E-Z Mart Stores, Inc., 464 F.3d 827, 829 (8th Cir. 2006).  Under Federal Rule of Civil Procedure 56(c), summary judgment is only appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  We will thus find that Level 3 is entitled to summary judgment only if it has carried its burden of showing that there exists no genuine issue of material fact as to whether the City's ordinance actually or effectively prohibited or materially inhibited Level 3's ability to provide telecommunications services, and that it is entitled to judgment as a matter of law.

Level 3's own motion for summary judgment answers this inquiry.  Level 3 claims "[t]he proper focus of a threshold § 253(a) inquiry . . . is the scope of the regulatory authority that a city purports to wield–not whether the city has used that authority to actually exclude a provider or service."  Level 3 further admits in its response to interrogatories that it "cannot state with specificity what additional services it might have provided had it been able to freely use the money that it was forced to pay to the City for access to the public rights-of-way."  This admission establishes that Level 3 has not carried its burden of proof on the record we have before us.

Without looking for actual or effective prohibition, and despite Level 3's own admissions on these matters, the district court summarily held that Chapter 23.64,

incorporated into the Agreement, "includes several provisions that 'in combination' 'have the effect of prohibiting' the ability to provide telecommunications services under 47 U.S.C. § 253(a)."

We disagree. After a thorough review of the entire record, we find insufficient evidence from Level 3 of any actual or effective prohibition, let alone one that materially inhibits its operations. Indeed, Level 3 claims it need not, and admits it has not, made such a showing. Further, because Level 3 has not carried its burden of establishing a violation under section 253(a), the district court's section 253(c) analysis was premature.[2]

### D.    Summary Judgment on Section 1983 Claim

In its amended complaint, Level 3 sought damages under section 1983, claiming that section 253 conferred rights on Level 3 as an intended beneficiary and that the City violated Level 3's rights under the statute. The district court denied summary judgment, holding that "Level 3 has not met its burden to demonstrate that the Act confers a federal right on it." Again, we review de novo a denial of a motion for summary judgment. Martin, 464 F.3d at 829.

Level 3, as a section 1983 plaintiff, bears the burden of establishing that "the claim actually involves a violation of a federal right, as opposed to a violation of a federal law." Ark. Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 523 (8th Cir. 1993). More specifically, "the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which [it] belongs." City of Rancho Palos Verdes v. Abrams, 544 U.S. 113, 120 (2005).

---

[2]As discussed above, because Level 3 shows no violation under section 253(a), any safe harbor analysis urged by St. Louis under section 253(c) is premature. We therefore do not reach the district court's analysis of the footage fees as "fair and reasonable compensation."

Circuits are split on whether section 253 creates a right enforceable through a section 1983 action. Compare Qwest Corp. v. City of Santa Fe, 380 F.3d 1258, 1265 (10th Cir. 2004) (finding Congress did not intend to create a private right of action in section 253), with BellSouth Telecomms., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1191 (11th Cir. 2001) (finding a private right of action to seek preemption of state regulations purporting to manage public rights-of-way); TCG Detroit v. City of Dearborn, 206 F.3d 618, 624 (6th Cir. 2000) (finding that section 253 creates a private right of action for parties aggrieved by a municipality's unfair rates). However, Arkansas Medical Society makes clear that the claim must involve not only an enforceable right, but also a violation of that right. 6 F.3d at 523. We refrain from joining the fray over whether section 253 creates a private right of action because, as we held above, Level 3 has shown no violation of section 253, whether or not that section creates an enforceable right. Thus, the district court did not err by denying summary judgment on the section 1983 claim.

## III.   CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment in favor of Level 3 on the issue of whether the City's regulatory scheme violates 47 U.S.C. § 253(a), affirm the denial of summary judgment on Level 3's section 1983 claim, and remand for further proceedings not inconsistent with this opinion.

_____