# United States Court of Appeals

For the Eighth Circuit

_____

No. 14-2808

_____

Spectra Communications Group, LLC

*Plaintiff - Appellant*

v.

City of Cameron, Missouri; Mark Gaugh, City Manager of Cameron, in his official capacity; Drew Bontrager, Director of Public Works of Cameron, in his official capacity

*Defendants - Appellees*

_____

No. 14-2848

_____

Spectra Communications Group, LLC

*Plaintiff - Appellee*

v.

City of Cameron, Missouri; Mark Gaugh, City Manager of Cameron, in his official capacity; Drew Bontrager, Director of Public Works of Cameron, in his official capacity

*Defendants - Appellants*

_____

Appeals from United States District Court
for the Western District of Missouri - St. Joseph

_____

Submitted: September 21, 2015
Filed: November 10, 2015
_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.
_____

MURPHY, Circuit Judge.

Spectra Communications Group, LLC (Spectra) brought this action against the City of Cameron (the City), alleging that the City had violated federal and Missouri law by requiring Spectra to comply with a local ordinance governing public rights of way. The district court[1] dismissed one of Spectra's federal claims for failure to state a claim and, in light of parallel state court proceedings, later dismissed Spectra's remaining claims on the basis of res judicata or, alternatively, abstention. The district court also denied the City's motion for attorney fees. Spectra and the City filed cross appeals. We affirm.

I.

Spectra has provided telecommunications services in the City for several years and maintains facilities in the City's rights of way. The City has enacted a Right-of-Way and Communications Ordinance (ROW code) requiring communications providers to pay user fees and obtain use permits to place or use facilities in the City's rights of way. The ROW code also requires right of way users to enter agreements with the City in order to attach facilities to the City's poles.

In July 2012 the City and several other municipalities sued Spectra and five related entities in Missouri state court for failure to pay municipal license taxes. The

_____

[1] The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

-2-

City alleged in amended pleadings that Spectra also had not paid user fees or obtained a public ways use permit as required by the ROW code. After the suit was filed, Spectra sought a construction permit from the City, which refused to issue it unless Spectra would obtain a public ways use permit and pay the user fees due under the ROW code. Spectra filed this action in response.

In January 2013 Spectra sued the City in the federal district court, alleging that the City had violated § 253 of the Telecommunications Act of 1996 (the Act) and Missouri law by requiring Spectra to comply with the ROW code before it would issue the construction permit. See 47 U.S.C. § 253; Mo. Rev. Stat. §§ 67.1830–1846. Spectra further alleged that the City was improperly attempting to force Spectra to concede contested issues in the state court litigation. Spectra sought a declaration that the City's actions and certain portions of the ROW code violated § 253 and Missouri law, an injunction requiring the City to issue Spectra a construction permit, and damages under 42 U.S.C. § 1983. In response, the City filed a motion to dismiss Spectra's complaint. The district court granted the motion in part in June 2013, dismissing Spectra's § 1983 claim with prejudice after concluding that § 253 did not authorize a private right of action under § 1983. The City also requested attorney fees for defending Spectra's § 1983 claim, which the district court denied.

In October 2013 the City canceled a pole attachment agreement allowing General Telephone, which Spectra claims is its predecessor in interest, to attach facilities to the City's poles. The City provided Spectra with a permit agreement that would allow it to attach facilities to the City's poles. Spectra claims that the agreement is essentially identical to the public ways use permit, and it amended its complaint. Its amended complaint alleges that the City had violated § 253 and Missouri law by cancelling the pole attachment agreement and requiring Spectra to obtain a permit to attach to the City's poles. Spectra's amended complaint also restated its § 1983 claim "for purposes of preserving [its] rights on appeal."

The City and the other municipalities filed their second amended petition in state court in November 2013. Before Spectra filed its answer, the state court granted partial summary judgment for the City on its ROW code claims. The court concluded that the ROW code was valid and enforceable and that the ROW user fees were valid under Missouri law "and any other law," and it ordered Spectra to comply with all ROW code provisions and to pay delinquent user fees. Spectra later filed its answer, including counterclaims against the City that were essentially identical to its federal claims.

The City moved to dismiss Spectra's remaining federal claims, asserting that those claims were precluded by the state court's partial summary judgment order. The City had also filed a motion for attorney fees based on Spectra's reassertion of its § 1983 claim. The district court dismissed Spectra's remaining claims, concluding that the state court's order precluded them, and, alternatively, that abstention was appropriate under either Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976) or Younger v. Harris, 401 U.S. 37 (1971). The court also denied the City's motion for attorney fees. Both parties appeal.[2]

II.

A.

First we address whether Spectra has properly appealed the dismissal of its § 1983 claim. The City argues that Spectra's § 1983 claim is not properly before us because Spectra's notice of appeal cites only the order dismissing its other claims. Federal Rule of Appellate Procedure 3(c) requires a notice of appeal to "designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). However, "there is a policy of liberal construction of notices of an appeal in situations

_____

[2] All pending motions by the parties to supplement the record are denied.

where intent is apparent and there is no prejudice to the adverse party." McAninch v. Traders Nat. Bank, 779 F.2d 466, 467 n.2 (8th Cir. 1985) (internal quotation marks omitted). We believe Spectra's intent to appeal "was apparent given the procedural history of the case," particularly because its amended complaint expressly reserved its right to appeal the dismissal of its § 1983 claim, and "the parties have addressed the merits in their briefs." Id. This issue is therefore properly before us.

B.

We review de novo the district court's dismissal of Spectra's § 1983 claim. See, e.g., Henley v. Brown, 686 F.3d 634, 639 (8th Cir. 2012). Section 1983 authorizes claims against state actors to enforce rights created by federal statutes. "In order to seek redress through § 1983, however, a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law*." Blessing v. Freestone, 520 U.S. 329, 340 (1997) (emphasis in original). The Supreme Court explained in Gonzaga University v. Doe, 536 U.S. 273 (2002) that "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms." 536 U.S. at 290. Here, we must determine whether § 253 authorizes a private right of action under § 1983. Section 253 provides in relevant part:

(a) In general
No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service.

(b) State regulatory authority
Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

(c) State and local government authority

Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

(d) Preemption

If, after notice and an opportunity for public comment, the [Federal Communications] Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

47 U.S.C. § 253.

Our court has not yet decided whether § 253 authorizes a private right of action. See Level 3 Commc'ns, L.L.C. v. City of St. Louis, Mo., 477 F.3d 528, 534 (8th Cir. 2007). The circuit courts which have addressed this issue are divided. The Sixth and Eleventh Circuits have concluded that § 253 implies a private right of action.[3] See TCG Detroit v. City of Dearborn, 206 F.3d 618, 624 (6th Cir. 2000); BellSouth Telecomm., Inc. v. Town of Palm Beach, 252 F.3d 1169, 1191 (11th Cir. 2001). The Second, Fifth, Ninth, and Tenth Circuits have reached the opposite conclusion. See NextG Networks of NY, Inc. v. City of New York, 513 F.3d 49, 52–53 (2d Cir. 2008); Sw. Bell Tel., LP v. City of Houston, 529 F.3d 257, 261–62

---

[3] Notably, "[a] court's role in discerning whether personal rights exist in the § 1983 context should [ ] not differ from its role in discerning whether personal rights exist in the implied right of action context." Gonzaga, 536 U.S. at 285. Thus, cases addressing implied private rights of action under federal statutes are applicable here.

(5th Cir. 2008); Sprint Telephony PCS, L.P. v. Cnty. of San Diego, 490 F.3d 700, 716–18 (9th Cir. 2007); Qwest Corp. v. City of Santa Fe, New Mexico, 380 F.3d 1258, 1266–67 (10th Cir. 2004). After examining their reasoning, we conclude that § 253 does not authorize a private right of action.

The Supreme Court has explained that "[f]or a statute to create [ ] private rights, its text must be phrased in terms of the persons benefited." Gonzaga, 536 U.S. at 284 (internal quotation marks omitted). Spectra argues that § 253 authorizes a private right of action for telecommunications providers because it refers to their ability to provide services. The language of § 253(a) is, however, phrased as a restriction on state and local governments, not as a conferral of benefits on telecommunications providers. Subsections (b) and (c) similarly address the rights retained by state and local governments, further demonstrating that those entities are the primary focus of § 253. See Qwest, 380 F.3d at 1267 n.6. In addition, the preamble to the Act indicates that consumers are the intended beneficiaries of the statute. See Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996). Telecommunications providers are therefore not within the class of individuals that § 253 protects, and even if they were, only "*rights,* not the broader or vaguer 'benefits' or 'interests,' [ ] may be enforced under the authority of [§ 1983]." Gonzaga, 536 U.S. at 283 (emphasis in original). We therefore conclude that the text of § 253 does not indicate that Congress intended to create a private right of action.

Spectra argues that other sections of the Act show that Congress intended to create a private right of action under § 253. Specifically, Spectra asserts that because § 255 of the Act expressly precludes private rights of action, we should infer from the absence of such language in § 253 that Congress intended to authorize them. See 47 U.S.C. § 255(f). We do not believe, however, that this inference establishes "in clear and unambiguous terms" that Congress intended to create a private right of action under § 253. Gonzaga, 536 U.S. at 290. Further, we note that where Congress has

-7-

intended to create private rights of action under the Act, it did so explicitly.  See, e.g., 47 U.S.C. §§ 252(e)(6), 258(b), 274(e).

Finally, the legislative history of § 253 does not indicate that Congress intended to create a private right of action.  Spectra argues that discussions surrounding the legislature's decision—to limit the preemptive authority of the Federal Communications Commission (FCC) to violations of § 253(a) and (b)—show that Congress intended for telecommunications providers to challenge local right of way ordinances in federal court.  See 47 U.S.C. § 253(d) ("If . . . the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates *subsection (a) or (b)* of this section, the Commission shall preempt the enforcement of such statute." (emphasis added)).[4]  The legislative history shows, however, that Congress restricted the FCC's preemptive authority to reduce the financial burden that state and local governments would face in defending their ordinances before the FCC.  See. e.g., 141 Cong. Rec. 15,590 (1995).  Such intent is inconsistent with a private right of action for damages by telecommunications providers like Spectra.  See, e.g., Sw. Bell, 529 F.3d at 262.

We interpret the legislative history as, at most, contemplating preemptive challenges to local ordinances which may be asserted irrespective of whether the preempting statute authorizes a private right of action.  See Qwest, 380 F.3d at 1266; Sprint, 490 F.3d at 708–09, 717; see also Wright Elec., Inc. v. Minn. State Bd. of

---

[4]The Sixth Circuit case on which Spectra relies concluded that § 253(c) provides a private right of action for telecommunications providers, similarly noting that § 253(d) withholds FCC preemptive authority for violations of § 253(c).  See TCG, 206 F.3d at 624.  Our court has previously concluded, however, that § 253(c) is a safe harbor to § 253(a) violations that, "standing alone, cannot form the basis of a cause of action against a state or local government."  Level 3, 477 F.3d at 532 (internal quotation marks omitted).

Elec., 322 F.3d 1025, 1028 (8th Cir. 2003). Notably, the congressional debate over § 253(d) focused on the extent of the FCC's jurisdiction to "preempt" or "enjoin" local regulatory actions. See, e.g., 141 Cong. Rec. 15,984 (1995). However, "it would obviously be incorrect to assume that a federal right of action pursuant to § 1983 exists every time a federal rule of law pre-empts state regulatory authority." Golden State Transit Corp. v. City of L.A., 493 U.S. 103, 108 (1989). We therefore conclude that § 253 does not authorize a private right of action for damages under § 1983 and that the district court did not err in dismissing Spectra's § 1983 claim.

## III.

We next address whether the district court properly abstained from deciding Spectra's remaining claims. We review a district court's decision to abstain for an abuse of discretion. See, e.g., Fru-Con Const. Corp. v. Controlled Air, Inc., 574 F.3d 527, 534 (8th Cir. 2009). Here, the district court concluded that abstention was proper under both Colorado River and Younger. Because we conclude that the district court properly abstained under Colorado River, we need not discuss the potential issue of whether Younger abstention would have been appropriate.

Colorado River permits federal courts to decline to exercise jurisdiction over cases where "parallel" state court litigation is pending, meaning that there is "a substantial likelihood that the state proceeding will fully dispose of the claims presented in the federal court." Cottrell v. Duke, 737 F.3d 1238, 1245 (8th Cir. 2013), quoting Fru-Con, 574 F.3d at 535. This rule is based on "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817 (internal quotation marks and alterations omitted). Nevertheless, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," id., which "does not evaporate simply because there is a pending state court action

involving the same subject matter." Federated Rural Elec. Ins. Corp. v. Ark. Elec. Coops., Inc., 48 F.3d 294, 297 (8th Cir. 1995). Rather, Colorado River abstention is appropriate only in "exceptional circumstances" where the surrender of federal jurisdiction is supported by "the clearest of justifications." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25–26 (1983).

We examine six factors to determine whether exceptional circumstances exist warranting abstention:

> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

Federated Rural, 48 F.3d at 297. We do not apply these factors as a "mechanical checklist," but instead weigh these factors "in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone, 460 U.S. at 16, 21.

The district court did not abuse its discretion in abstaining. The first two factors are irrelevant in this case because there is no res at issue, and the state and federal fora are equally convenient. See Federated Rural, 48 F.3d at 297. The third factor, the risk of piecemeal litigation, is the "predominant factor" and is a significant concern here. Id.; Mountain Pure, LLC v. Turner Holdings, LLC, 439 F.3d 920, 926–27 (8th Cir. 2006). Here, the state and federal cases involve the same issues, particularly in light of Spectra's state court counterclaims which are essentially

identical to its federal claims. In this situation, the federal and state courts could reach conflicting opinions on the same issues, which could "cause unwarranted friction between state and federal courts, a result which is obviously undesirable and avoidable in this instance." Employers Ins. of Wausau v. Missouri Elec. Works, Inc., 23 F.3d 1372, 1375 (8th Cir. 1994), abrogated on other grounds by Wilton v. Seven Falls Co., 515 U.S. 277 (1995).

Spectra argues that the risk of piecemeal litigation is insignificant here because its federal claims are easily severable from its state claims. Spectra's federal claims, however, seek a declaration that the ROW code is preempted by § 253, and the legality of the ROW code is a central issue in the state court litigation. Although Spectra's preemption claim provides an independent basis for invalidating the ROW code, that claim is not "easily severable from the merits of the underlying disputes." Moses H. Cone, 460 U.S. at 21. Accordingly, we do not believe that "resolution of these suits necessarily requires piecemeal litigation" and conclude that this factor is significant here. Gov't Employees Ins. Co. v. Simon, 917 F.2d 1144, 1149 (8th Cir. 1990).

Spectra also argues that there is no risk of inconsistent rulings by the state and federal courts here because each court will give preclusive effect to the other's rulings. The state court action, however, includes several defendants who are not parties to the federal lawsuit, and "[o]ur cases have advanced [the policies underlying Colorado River] by favoring the most complete action." Federated Rural, 48 F.3d at 298; see also Employers Ins. of Wausau, 23 F.3d at 1375; U.S. Fid. & Guar. Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994). Here, the state court action is more complete because it includes all parties and claims. We therefore conclude that the third factor favors abstention.

The fourth factor similarly favors abstention because the state litigation has priority over the federal case. The state case was filed first, and the state court was thus the first to obtain jurisdiction over the parties. See Colorado River, 424 U.S. at 818. Further, the state litigation is more advanced because the state court has addressed the merits of the ROW code claims and has entered partial summary judgment on those claims. The federal court on the other hand has not yet addressed the merits of Spectra's claims. Compare Mountain Pure, 439 F.3d at 927. We therefore conclude that the fourth factor also favors abstention.

We acknowledge that the fifth factor weighs against abstention because "the presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]." Moses H. Cone, 460 U.S. at 26. Here, as Spectra notes, the federal litigation involves a question of federal preemption. Nevertheless, "[n]o one factor is necessarily determinative" in assessing whether abstention is appropriate. Colorado River, 424 U.S. at 818. We do not believe that this issue warrants reversal, particularly because, as Spectra concedes, the state court can resolve all of Spectra's federal claims.[5] See Wolfson v. Mut. Ben. Life Ins. Co., 51 F.3d 141, 146 (8th Cir. 1995), abrogated on other grounds by Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996). Further, the sixth Colorado River factor also favors abstention because the state court can adequately protect Spectra's interests. See, e.g., U.S. Fid. & Guar. Co., 21 F.3d at 263. We therefore conclude, after "taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise," that the district court did not abuse its discretion in abstaining. Colorado River, 424 U.S. at 818–19. Because we conclude that the district court did not abuse its discretion in abstaining, we need not decide

_____

[5] In fact the state court's partial summary judgment order appears to foreshadow the resolution of the preemption issue by its determination that the ROW code user fees are valid under "any [ ] law."

whether the state court's partial summary judgment order precludes Spectra's remaining claims.

## IV.

We finally address the City's cross appeal of the district court's denial of its motion for attorney fees. We review an order denying attorney fees for an abuse of discretion. See Flowers v. Jefferson Hosp. Ass'n, 49 F.3d 391, 392 (8th Cir. 1995). "[T]he relevant purpose of § 1988 [attorney fees] is to relieve defendants of the burdens associated with fending off frivolous litigation." Fox v. Vice, 131 S. Ct. 2205, 2215 (2011). Thus, "[a] court may award prevailing defendants attorney's fees under section 1988 only if the plaintiff's claim was frivolous, unreasonable, or groundless, or the plaintiff continued to litigate after it clearly became so." Flowers, 49 F.3d at 392 (internal quotations marks and alterations omitted).

The district court did not abuse its discretion in denying the City's first request for attorney fees because the question of whether § 253 creates a private right of action was unresolved in our circuit, the other circuit courts are divided on that issue, and the parties presented "reasonable arguments on both sides." Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan, 574 F.3d 644, 651 (8th Cir. 2009). The district court also did not abuse its discretion by denying the City's renewed fee request because Spectra did not continue actively to pursue its § 1983 claim after the district court dismissed it, but simply reasserted it for the purpose of preserving its rights on appeal. The City therefore did not need to "fend off" Spectra's renewed § 1983 claim. See Fox, 131 S. Ct. at 2215.

V.


Section 253 does not create an individual private right of action and the district court therefore did not err in dismissing Spectra's § 1983 claim. In addition, the district court did not abuse its discretion in abstaining under <u>Colorado River</u> or in denying the City's motion for attorney fees. The judgment of the district court is affirmed.

_____