**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 14, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CNSP, INC., d/b/a NMSURF,

    Plaintiff - Appellant,

v.

CITY OF SANTA FE,

    Defendant - Appellee.

No. 18-2041
(D.C. No. 1:17-CV-00355-KG-SCY)
(D. N.M.)

_____

**ORDER AND JUDGMENT***
_____

Before **TYMKOVICH**, Chief Judge, **McKAY**, and **MATHESON**, Circuit Judges.
_____

CNSP, Inc., d/b/a NMSURF, sued the City of Santa Fe for not acting on its application seeking access to construct an intrastate telecommunications wireline in a public right-of-way and the City's actions in administering its telecommunications ordinances. The federal district court concluded that NMSURF failed to state a claim for relief and dismissed the complaint. Exercising appellate jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

_____

  * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

In January 2015, NMSURF applied for a telecommunications franchise with the City of Santa Fe to construct infrastructure in a public right-of-way,[1] specifically, an "intrastate wireline Fiber Optic Network." Aplt. App. at 17. A complete application typically leads to a negotiated franchise agreement that is later adopted by a city ordinance. *See* City of Santa Fe, N.M., Code of Ordinances, § 27-2.4 (2016). Adoption of the franchise agreement subjects the franchisee to a two percent infrastructure maintenance fee, so long as the fee is not "imposed in any circumstances . . . [that] would violate the Constitution or statutes of the United States." *Id.* § 27-2.5(A).

In March 2017, NMSURF sued the City in federal district court, alleging that the City "ha[d] delayed and prohibited [NMSURF's] application for [public right-of-way access], thereby harming [NMSURF's] intrastate wireline business." Aplt. App. at 9-10. While NMSURF's application was pending, the City allegedly granted other telecommunications companies access to a public right-of-way and did not require them to pay internet access fees. NMSURF claimed that the City's actions violated 47 U.S.C. § 253's guarantee of open and non-discriminatory access to public rights-of-way for the provision of telecommunications services. The City moved to dismiss, arguing that NMSURF had failed to plead a plausible claim because § 253 does not provide a private

---

[1] Under the City's telecommunications ordinances, the term "'Public right-of-way' has the meaning of Section 3-1-2(M) NMSA 1978," City of Santa Fe, N.M., Code of Ordinances, § 27-2.3 (2016) (italics omitted), which references "any thoroughfare that can accommodate pedestrian or vehicular traffic, is open to the public and is under the control of the municipality," N.M. Stat. Ann. § 3-1-2(M).

cause of action. The district court construed the motion as seeking judgment on the pleadings and granted it.[2] NMSURF appealed.

While this appeal was pending, the City, on May 9, 2018, passed an ordinance granting NMSURF a telecommunications franchise. *See* City of Santa Fe, N.M., Ordinance No. 2018-13 (May 9, 2018).

## II. **DISCUSSION**

### A. *Legal Background*

"We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (internal quotation marks omitted). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. We assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (brackets, citation, and internal quotations marks omitted); *see Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007).

---

[2] NMSURF also claimed that the City violated the Equal Protection Clauses of the U.S. and New Mexico Constitutions and the Anti-donation Clause of the New Mexico Constitution. NMSURF's federal equal protection claim is not before us because NMSURF does not contest its dismissal by the district court. *See Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived."). As for NMSURF's claims under the New Mexico Constitution, the district court declined to exercise supplemental jurisdiction over them after dismissing NMSURF's federal claims.

Section 253, entitled "Removal of barriers to entry," is part of the Telecommunications Act of 1996 ("TCA") and preempts local laws that "have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Despite that prohibition, local governments retain the authority "to manage the public rights-of-way [and] to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government." *Id.* § 253(c). Thus, "section 253(a) states the general rule [of preemption] and section 253(c) provides the exception—a safe harbor functioning as an affirmative defense—to that rule." *Level 3 Commc'ns, L.L.C. v. City of St. Louis*, 477 F.3d 528, 532 (8th Cir. 2007). Subsection (d) authorizes the Federal Communications Commission (FCC) to determine whether a "local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a)" and to then "preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency." *Id.* § 253(d).

## B. *Analysis*

### 1. **No Private Right of Action for Damages**

NMSURF seeks relief under § 253(c) through an implied private right of action brought under 42 U.S.C. § 1983. But "where the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga Univ. v.*

4

*Doe*, 536 U.S. 273, 286 (2002). In *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1265 (10th Cir. 2004), this court held that "nothing in the text or structure of § 253 indicates a [ ] [congressional] intention to create a private right." In so holding, we applied *Gonzaga*'s test for discerning a private right of action—whether a statute grants any "'private rights to any identifiable class'" *Id*. (quoting *Gonzaga*, 536 U.S. at 284). We acknowledged that the Supreme Court said in *Gonzaga* that it had been "reluctan[t] to infer congressional intent to create a federal right" in Spending Clause legislation. *Qwest Corp.*, 380 F.3d at 1265 n.2. Thus, we "assume[d], without deciding, that *Gonzaga* provides the correct test." *Id*.

Seizing upon that assumption, NMSURF argues that the correct test for finding whether § 253(c) authorizes a private right of action is *Cort v. Ash*, 422 U.S. 66, 78 (1975) (identifying four factors relevant to deciding "whether a private remedy is implicit in a statute not expressly providing one").[3] The Sixth Circuit has said that *Cort* supports finding a private right of action in § 253(c). *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 623-24 (6th Cir. 2000); *but cf. Superior Commc'ns v. City of Riverview*, 881 F.3d 432, 444 (6th Cir. 2018) ("hold[ing] that there is no private cause of action available under § 253(a)"). Nonetheless, NMSURF's argument fails to persuade us.

---

[3] The *Cort* factors are (1) "the plaintiff [is] one of the class for whose especial benefit the statute was enacted"; (2) "there [is] an[ ] indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one[ ]"; (3) "it [is] consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff"; and (4) "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." 422 U.S. at 78 (internal quotation marks omitted).

First, "the critical inquiry is whether Congress intended to create a private right of action." *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 508 (9th Cir. 2002); *see also Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 522 (5th Cir. 2002) (stating that congressional intent is the "touchstone of the *Cort* analysis"). In *Qwest*, this court assessed whether Congress intended to supply a private right of action anywhere in § 253, and it found no such intent. 380 F.3d at 1265-67. We are bound by that determination, whether it was derived from a *Cort* or a *Gonzaga* analysis. *See Tootle v. USDB Commandant*, 390 F.3d 1280, 1283 (10th Cir. 2004) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." (internal quotation marks omitted)).

Second, in *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113 (2005), the Supreme Court cited *Gonzaga* in a TCA case when it addressed whether Congress intended to create a private right of action to enforce limitations on a local government's regulation of antenna towers. *See id.* at 120 (observing that "to sustain a § 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs"). The Supreme Court's decision validates *Qwest*'s reliance on *Gonzaga* in the context of § 253.

Third, since *City of Rancho Palos Verde* was decided in 2005, the Eighth and Second Circuits have decided that § 253 does not create a private right of action. *See Spectra Commc'ns Grp., LLC v. City of Cameron*, 806 F.3d 1113, 1119 (8th Cir. 2015) (applying *Gonzaga* and "conclud[ing] that the text of § 253 does not indicate that

6

Congress intended to create a private right of action"); *NextG Networks of N.Y., Inc. v. City of N.Y.*, 513 F.3d 49, 52-53 (2d Cir. 2008) (same).

2. **Preemption Claim and Equitable Relief**

In the district court, NMSURF argued that § 253 preempts various parts of the City's telecommunications-franchise ordinance. Aplt. App. at 42-45. Citing § 253(d) and *Qwest*, the district court concluded that only the FCC has the authority to declare preemption, so NMSURF did not state a claim on this ground. *See* 47 U.S.C. § 253(d) (requiring the FCC to preempt any statute, regulation, or legal requirement that violates subsection (a) or (b)).

Contesting this ruling on appeal, NMSURF argues correctly in its opening brief that this court in *Qwest* held that "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted even if the federal law at issue does not create a private right of action." 380 F.3d at 1266; *see, e.g.*, *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 543 F.3d 571, 574-75, 580-81 (9th Cir. 2008) (en banc).

The Supreme Court, however, later clarified that no "implied right of action [is] contained in the Supremacy Clause." *Armstrong v. Exceptional Child Center, Inc.*, 135 S. Ct. 1378, 1384 (2015). Rather, the power of federal courts to enjoin state laws that violate federal law arises from "the creation of courts of equity." *Id.* Thus, "federal courts may in some circumstances grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Id.*[4] Those circumstances include whether

---

[4] NMSURF's complaint did not name any state officers or City officials as defendants.

7

Congress has expressly or implicitly precluded private enforcement of federal law. *Id.* at 1385.

Moreover, in *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017), this court held in a divided opinion that to maintain an equitable cause of action to "enforce [a federal statute's] preemptive effects," *id.* at 903, the plaintiff must plausibly allege that the statute confers on the plaintiff a federal substantive "right of her or his own to vindicate," *id.* at 902.[5]

Neither the district court nor the parties discussed or even cited to *Armstrong* or *Safe Streets Alliance*. We therefore asked the parties to address these cases in supplemental briefs as to whether NMSURF may proceed with an equitable preemption claim.

Having studied the supplemental briefs,[6] we remand this issue for NMSURF to amend its complaint. In its order dismissing the complaint, the district court (a) simply determined that a court cannot entertain an equitable preemption claim because subsection (d) of the statute mentions only the FCC's preemption authority,[7] and (b) did

---

[5] In a concurring opinion, Judge Hartz found "no language in *Armstrong* stating that the Court should 'first' (or ever, when examining the federal courts' equity power) concern itself with whether the party seeking injunctive relief alleged any federal substantive right." *Id.* at 916.

[6] We also received an amicus brief from CenturyLink, CTIA, and USTelecom.

[7] *See* 47 U.S.C. § 253(d) ("If . . . the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) or (b) of this section, the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.").

not analyze the complaint's allegations or whether they stated a claim under *Armstrong* and *Safe Streets Alliance*.[8]  To enable meaningful review of whether NMSURF has stated an equitable preemption claim, the allegations in the complaint should be updated and revised in light of (a) *Armstrong* and *Safe Streets Alliance*, and (b) NMSURF's having been awarded a franchise.

Examination of the complaint supports these points.  The factual allegations describe the provisions of Chapter 27 of The City of Santa Fe City Code, which governs telecommunications facilities.  Aplt. App. at 11-13.  The complaint then alleges three causes of action.  Only the first is at issue on this appeal.[9]  It is titled "Violation of Telecommunications Act – Removal of Barriers to Entry."  *Id.* at 14.  It alleges that the City "has not acted on NMSURF's application."  *Id.*  It describes specific provisions of Chapter 27, including § 27.2.5(A), which requires a 2 percent fee "for all services

---

[8] Although the district court did not analyze NMSURF's equitable preemption claim based on the relevant case law, it nevertheless viewed the complaint as containing such a claim.  The claim's presence is evident from "read[ing] [the complaint] as a whole" and "expansively construing [the complaint]." *Zokari v. Gates*, 561 F.3d 1076, 1085 (10th Cir. 2009). *See, e.g.*, Aplt. App. at 10 (complaint's prefatory allegation that "[t]he court should pre-empt and invalidate" the City's telecommunications-franchise ordinance); *id.* at 16 (complaint's § 253 claim for relief, which alleges that the City's telecommunications-franchise ordinance "should be invalidated and or pre-empted"); *id.* at 19-20 (complaint's prayer for declaratory and injunctive relief, which alleges that the City's telecommunications-franchise ordinance is "pre-empted, invalid, and . . . contrary to the Constitution, [t]he [TCA], and laws of the United States").

[9] The second cause of action alleges a violation of equal protection under the Fifth Amendment and a violation of the New Mexico Constitution.  The third also alleges a violation of the New Mexico Constitution.

terminated to an address in the City." *Id.* at 15. And it alleges repeatedly that Chapter 27 "has the effect of prohibiting entry." *Id.* at 16.

Although the complaint states that "Defendants' [sic] Chapter 27 City Code violations cause ongoing harm to NMSURF and should be invalidated and or pre-empted," *id.*, the first cause of action emphasizes that the City's administration of Chapter 27 has prevented NMSURF from access to a public right-of-way. And although NMSURF states at the beginning and end of the complaint that it wants the court to preempt certain sections of Chapter 27, it is not clear whether this remedy was requested to enable NMSURF to obtain a franchise, which the City now has granted, and it is not clear whether or to what extent its preemption challenge is moot.

For these reasons, the district court's dismissal of NMSURF's claim for preemption is not amenable to appellate review, and the matter must be remanded for NMSURF to clarify its claim. The case also must be remanded for the district court to address an even more fundamental question—whether the federal courts have jurisdiction over NMSURF's putative equitable preemption claim. We turn to that question next.[10]

3. **Potential Mootness Issue**

Because the City granted a franchise to NMSURF while this appeal was pending, and because the primary concern of the original complaint was the City's failure to act on

---

[10] We recognize that the district court denied NMSURF's request for leave to amend the complaint because NMSURF did not file a formal motion or a proposed amended complaint. Aplt. App. at 77-78. We do not question the basis for that ruling. Our remand for NMSURF to file an amended complaint is premised on the parties' and the district court's failure to address relevant case law on equitable preemption and on factual developments raising mootness concerns.

NMSURF's franchise application, the award of the franchise raises a mootness concern. Although we asked the parties to address this concern in their supplemental briefs, they paid scant attention to this issue. NMSURF did contend in its reply brief that despite having been granted a franchise, the City has set "un-equal fees," obtained "a three year plus competitive edge over NMSURF . . . by creating its own network," avoided "pay[ing] any charges for revenues generated under its municipal network," and failed to "institute policies, practices, and procedures to ensure compliance with [public right of way] applications." Aplt. Reply Br. at 4, 12 (internal quotation marks omitted).

As with the question of whether the complaint states a claim, and despite factual assertions in the reply brief, we again find the complaint inadequate to meaningfully assess the mootness issue. The district court on remand, with the benefit of an updated amended complaint, should determine whether the City's recent grant of a telecommunications franchise to NMSURF has mooted NMSURF's equitable preemption claim. *See Restoration Risk Retention Grp. v. Gutierrez*, 880 F.3d 339, 342 (7th Cir. 2018) (remanding for a mootness determination where "intervening amendments to [a state] statute [may have] render[ed] th[e] litigation moot"); *Grimm v. Gloucester Cty. Sch. Bd.*, 869 F.3d 286, 290 (4th Cir. 2017) (remanding for a mootness determination in light of intervening events "requir[ing] factual development of the record" (internal quotation marks omitted)).

### III. CONCLUSION

We affirm the district court's dismissal of NMSURF's § 253 damages claim. We reverse the dismissal of NMSURF's preemption claim for equitable relief, and we

11

remand with instructions to order NMSURF to file an amended complaint and for further

proceedings consistent with this Order and Judgment.[11]

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge

---

[11] If the district court on remand determines that NMSURF has pled a plausible equitable preemption claim, not mooted by the City's recent grant of a franchise, the district court will need to revisit NMSURF's state law claims, which were dismissed due to the lack of an attendant federal jurisdiction claim.